IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROMAN GABRIEL CONTRERAS,<br><br>Defendant. | Case No. 15-cr-00242-DKW<br><br>**ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY MOTION FOR COMPASSIONATE RELEASE** |

On June 5, 2020, the assigned Magistrate Judge (Dkt. No. 152) recommended denying Defendant Roman Gabriel Contreras' motion for compassionate release, finding that Contreras was a danger to the safety of others and statutory sentencing factors did not weigh in favor of granting the motion ("F&R"). Contreras objects to the F&R (Dkt. No. 153), arguing that the Magistrate Judge improperly relied upon various prior convictions, alleged debts, and his failure to express remorse for his offense, and failed to take into consideration his conduct in prison, medical conditions, and place of incarceration. For the reasons set forth below, none of Contreras' arguments warrant overruling the F&R or granting his motion for compassionate release. Therefore, the F&R is ADOPTED as set forth herein.

## **RELEVANT BACKGROUND**

On April 8, 2015, a grand jury returned a one-count indictment, charging Contreras with attempting to possess with the intent to distribute 500 grams or more of methamphetamine. Dkt. No. 14. On May 14, 2015, the government filed a 21 U.S.C. § 851 Special Information, notifying of its intent to rely on a prior conviction of Contreras in 1999 in order to subject him to increased punishment, including an increased mandatory minimum term of imprisonment. Dkt. No. 35.

On July 6, 2015, a jury found Contreras guilty of attempting to possess with the intent to distribute 500 grams or more of methamphetamine. Dkt. Nos. 80, 84. Thereafter, a draft pre-sentence investigation report (PSR) and a revised PSR were prepared in advance of sentencing. Dkt. Nos. 86, 89. In the revised PSR, Contreras was assigned responsibility for 1.19 kilograms of d-methamphetamine hydrochloride of at least 80 percent purity (or "ice"). Dkt. No. 89 at ¶¶ 18-19. Contreras was awarded a two-point increase in his base offense level for willfully attempting to obstruct or impede the administration of justice during the prosecution of his offense. *Id*. at ¶ 23. He was also not assigned any points for

acceptance of responsibility, having failed to make any such acceptance. *Id*. at ¶ 26.

Among other convictions recorded in the PSR was the 1999 conviction of Contreras relied upon by the government in its Special Information. *See id*. at ¶ 33. This offense involved Contreras being found with 27.4 grams of methamphetamine in his possession, for which he was sentenced to 10 years imprisonment. In October 2004, Contreras was paroled. In January 2007, he absconded, resulting in the revocation of his parole approximately a year later. In August 2008, Contreras was paroled again. In May 2009, a violation report noted that Contreras had failed to enter drug treatment, consumed alcohol, failed to obtain employment, and used a controlled substance. Contreras was, nonetheless, allowed to continue on parole in order to enroll in a drug treatment program. However, in June 2009, another probation violation report was filed, again alleging that Contreras had failed both to enter drug treatment and obtain employment. Although Contreras admitted to using methamphetamine, no further action appears to have been taken. *Id*.

In light of the Special Information filed by the government and Contreras' crime of conviction, at the time of sentencing, he was subject to a mandatory minimum term of imprisonment of 20 years. *Id*. at ¶¶ 73-74; *see also* 21 U.S.C.

§ 841(b)(1)(A) (2015). The guideline imprisonment range was 240 to 293 months. Dkt. No. 89 at ¶ 75.

The PSR further reported that Contreras had a limited employment history and financial liabilities totaling more than $225,000, the vast majority of which involved medical debts and educational loans. *Id.* at ¶¶ 69-72. The PSR also reported, with respect to Contreras' physical condition, that he had suffered from a chronic staph infection since 1997, he weighed 350 pounds, and was diagnosed with hypertension in 2015. *Id.* at ¶¶ 57-60.

No objections were filed to either the draft PSR or the revised PSR. Dkt. Nos. 87-88, 90.

On October 21, 2015, Contreras was sentenced to 240 months imprisonment and 10 years of supervised release. Dkt. Nos. 94, 96. At sentencing, with there being no objections to the revised PSR, the Court adopted the same without change. Dkt. No. 97; Dkt. No. 115 at 2:9-3:8. There was also no objection to the validity or sentencing effect of Contreras' 1999 conviction. Dkt. No. 115 at 3:14-17. Contreras' counsel agreed, under the circumstances, that a sentence of 240 months imprisonment was "sufficient and not greater than necessary in this case."

*Id*. at 6:22-23.  In allocution, Contreras stated that he was "sorry" for what had happened.  *Id*. at 8:17-18.

In pronouncing sentence, the Court observed that, in aggravation, Contreras had a long-standing involvement with and promotion of drugs, he had not been deterred by his 1999 conviction that also involved methamphetamine, he was responsible for substantially more methamphetamine in this case, his parole had been revoked in California, he had numerous other arrests, he had chronic substance abuse issues, he had considerable financial debt and limited employment history suggesting that recidivism was a real risk, and, other than his "limited comments" in allocution, he had never expressed remorse or accepted responsibility for his conduct.  *Id*. at 9:18-11:15.  In mitigation, the Court noted that "there's not much there frankly."  *Id*. at 11:16.  As a result, the Court imposed a sentence of 240 months imprisonment, the mandatory minimum, and 10 years of supervised release.  *Id*. at 11:22-12:2, 13:24-25.

## **LEGAL STANDARD**

Pursuant to Section 3582(c)(1)(A)(i), a court may, after considering the factors set forth in Section 3553(a), modify a term of imprisonment if, upon motion of the Director of the Bureau of Prisons (BOP) or the defendant following exhaustion of administrative rights related thereto, "extraordinary and compelling

5

reasons warrant such a reduction[,]" the defendant is not a danger to the safety of others or the community, and the reduction is consistent with the relevant policy statement of the U.S. Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13.[1]

Pursuant to Section 636(b)(1)(B) of Title 28, a Magistrate Judge may submit proposed findings of fact and recommendations for the disposition of any post-trial motion made by a convicted criminal, such as the instant motion for compassionate release.  When objection is made to any part of the Magistrate Judge's report, a district judge must review the same de novo.  28 U.S.C. § 636(b)(1).  The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id*.

## DISCUSSION

Contreras' objections to the F&R ask this Court to make a de novo review of the Magistrate Judge's findings with respect to his alleged danger to the community and the sentencing factors under Section 3553(a).  Nonetheless, throughout his objections, Contreras confuses those two distinct findings as if they were one.  For example, Contreras asserts that the Magistrate Judge improperly

---

[1] Here, without subsequent objection, the Magistrate Judge found that Contreras had exhausted his administrative remedies and shown an "extraordinary and compelling" reason for release. Dkt. No. 152 at 4-7.  As a result, for purposes of the instant analysis, the Court accepts those findings.

6

relied upon his failure to express remorse for his offense "to indicate that Contreras is a danger to the community…." Dkt. No. 153 at 9. That, however, was not the finding the Magistrate Judge made. Instead, the Magistrate Judge listed, among other things, Contreras' failure to express remorse as a *factor* under Section 3553(a) for not granting his motion. *See* Dkt. No. 152 at 8-9. Dangerousness and the Section 3553(a) factors are two distinct inquiries, with failure to make the requisite showing for either one reason alone to deny a motion for compassionate release. *See* U.S.S.G. § 1B1.13.

    Notably, at no point in his objections does Contreras even address the statutory sentencing factors under Section 3553(a). *See generally* Dkt. No. 153. The first sentencing factor is the "nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). At best, Contreras gives nothing but lip service to this factor. Contreras does so by discussing only his conduct following his incarceration in 2015. *See* Dkt. No. 153 at 6-7. While that conduct may, arguably, be of some relevance to assessing Contreras' "characteristics" now, it entirely ignores the far longer period of "history and characteristics" pre-dating his sentence, which, given its length and freedom from constraint that is imprisonment, is still just as relevant now as it was when Contreras was sentenced. If it was otherwise, *i.e.*, if, as Contreras appears to

7

suggest, the Court should only consider his post-sentencing conduct, then the Court would hardly be assessing the "history and characteristics" of Contreras. Instead, the Court would only be assessing the characteristics of an incarcerated Contreras. This Court declines to do the latter.

When the correct approach is taken, the Court is unpersuaded that Contreras' asserted clean disciplinary record and completion of certain educational courses in prison, *see* Dkt. No. 151 at 8, mitigate the history and characteristics that were set forth in the PSR and adopted by the Court at sentencing. Particularly, Contreras' prior methamphetamine conviction in 1999, his conduct during his subsequent incarceration and parole, his revocation of parole for absconding, and his commission of the offense for which he was convicted in this case, which involved substantially more methamphetamine than in 1999, together form a truer and more complete picture. In addition, despite his single word of "sorry" during his allocution, and as the Court previously found in withholding any downward adjustment under U.S.S.G. § 3E1.1, Contreras has never accepted his responsibility for the offense in this case. *See* Dkt. No. 89 at 7. As far as this Court is concerned, the foregoing "history and characteristics" are far more relevant to weighing whether the Section 3553(a) factors support Contreras' release, than his unremarkable record while in prison since 2015.

In addition, just as the Court did at sentencing, the Court has considered Contreras' leg infection, weight, and hypertension.  Although the Magistrate Judge found that Contreras' medical conditions constituted an extraordinary and compelling reason under Section 3582(c)(1)(A)(i), for purposes of considering the Section 3553(a) factors, that finding does not mean Contreras' "characteristics" weigh in favor of his release.  Rather, as discussed above, Contreras' characteristics in toto weigh in favor of the continuation of his 240-month sentence.[2]

The first sentencing factor also asks the Court to look at the nature and circumstances of the offense.  Nowhere in his briefing does Contreras do so.  This is perhaps for good reason because the nature and circumstances of his offense certainly do not support Contreras' release.  As the Court observed at sentencing, Contreras was found responsible for 1.19 kilograms of ice, an amount far in excess of the 50 *grams* needed for a mandatory minimum sentence of *ten* years imprisonment under Section 841(b)(1)(A), even without the filing of a Special

---

[2]The fact that Contreras may have contracted coronavirus at the beginning of May 2020, *see* Dkt. No. 152 at 3 n.1 (describing the suggestive, but far from conclusive, evidence in this regard), does not change the Court's calculus.  Although Contreras asserts in his objections that he is now, presumably as of June 12, 2020 (when his objection was filed), suffering from a leg infection and coughing, *see* Dkt. No. 153 at 11 n.3, there is no indication that either of those conditions is related to him contracting the coronavirus more than a month earlier.

Information. The Court, therefore, finds that the first sentencing factor does not weigh in favor of releasing Contreras.

The second sentencing factor is "the need for the sentence imposed[,]" which directs the Court to consider such things as the seriousness of the offense, adequate deterrence of criminal conduct, protection of the public from further crimes of the defendant, and providing the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2). In his briefing, Contreras does not address this sentencing factor.[3] In any event, when the Court does so, none of the considerations underlying the factor support his release. As mentioned above, Contreras was convicted of a *serious* drug offense, involving 1.19 kilograms of ice. At present, he has served a little over five years of his sentence. Put simply, from the Court's perspective, a five-year sentence neither reflects the seriousness of Contreras' offense nor provides adequate deterrence to future criminal conduct by either Contreras or any other individual thinking of being involved with such a quantity of ice. Similarly, in the Court's estimation, a five-year sentence would do little to protect the public from further crimes by Contreras. While, as discussed, Contreras asserts that he has behaved well while in prison, the Court, again, finds this conduct outweighed by Contreras' conduct following his 1999

---

[3]This is perhaps because Contreras appears to believe that *no* further sentence is needed.

conviction over a much longer period of time, which indicates a real risk of the public suffering from further crimes. In addition, as observed at sentencing, Contreras' financial situation (indebtedness exceeding $225,000) and limited employment history, despite his age, also suggest that his risk of recidivism is real. In his objections, Contreras disputes the Magistrate Judge's reliance on his financial situation, arguing that "[t]here is no evidence that Contreras still owes this debt after having served over five years in jail[]" and the government needed to provide evidence that his debts still existed. Dkt. No. 153 at 7. First, it is *Contreras'* burden to show he is entitled to release, not the government's burden to show that he is not. Therefore, if it was incumbent upon anyone to support or dispute the undisputed record established by the revised PSR of Contreras' financial condition, it was Contreras. Instead, he merely asserts that there is no evidence that his debt remains after "having served over five years in jail." It is entirely unclear what serving five years in jail would do to Contreras' debt, at least in the manner he appears to suggest. In any event, the record here shows that Contreras owes a substantial debt with a limited employment history, and there is no evidence to the contrary. Therefore, the Court finds that all of the foregoing facts still weigh in favor of the 20-year sentence imposed in this case, as does this sentencing factor generally.

The third and fourth sentencing factors concern the kinds of sentences available and the sentencing range for the offense of conviction. 18 U.S.C. §3553(a)(3)-(4). Again, Contreras does not address these sentencing factors. They, however, strongly weigh against releasing him five years into his sentence. This is because the *minimum* sentence available to Contreras at sentencing was 20 years imprisonment.[4] While, as Contreras notes, the relevant statute has since changed to require only a 15-year mandatory minimum sentence, *see* Dkt. No. 153 at 9 n.2, even 15 years is not 5. Moreover, Contreras' guideline sentencing range, even without the affect of a mandatory minimum, was 235 to 293 months imprisonment. Dkt. No. 89 at ¶ 75.[5] This is far in excess of the 62 months of imprisonment Contreras has currently served. In this light, the Court finds that these sentencing factors weigh in favor of the 20-year sentence imposed in this case.

The final relevant sentencing factor is the need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of

---

[4]Because it is not necessary in this case, the Court does not address whether a defendant may be released under Section 3582(c)(1)(A)(i) when his release would result in him not serving a statutory mandatory minimum sentence. Based upon the Court's independent research, that issue does not appear to have been addressed by the Ninth Circuit. *See United States v. Varnado*, 2020 WL 2512204, at *1 n.1 (S.D. Cal. May 15, 2020).

[5]To the extent relevant, the Court notes that the current version of the guidelines manual would still assign Contreras a base offense level of 34 for his offense involving 1.19 kilograms of ice. *See* U.S.S.G. § 2D1.1(c)(3) (2018).

similar conduct.   18 U.S.C. § 3553(a)(6).[6]   As discussed, here, due to Contreras' criminal record and his offense conduct in this case, he was subject to a mandatory minimum sentence.   Any other individual with a similar criminal record and similar offense conduct would also be subject to the same minimum sentence. Releasing Contreras now, 62 months into his imprisonment, would, therefore, undoubtedly result in a sentencing disparity with those defendants with similar records and similar offense conduct who are serving their mandatory minimum sentences.   This factor, thus, weighs in favor of the 240-month sentence imposed in this case.

Finally, in his objections, Contreras appears to assert that the Magistrate Judge erred in failing to consider "his conditions of confinement or his dire medical conditions…."   Dkt. No. 153 at 11.   Contreras appears to assert that the Magistrate Judge should have weighed these conditions against his alleged danger to the community and determined that his conditions alone warrant release.   *Id*. at 11-12.   Contreras is wrong.   As discussed above, there are *three* principal considerations in addressing a motion for compassionate release under Section 3582(c)(1)(A)(i): (1) whether extraordinary and compelling reasons exist for

---

[6]The parties do not address and the Court does not find relevant here the fifth and seventh sentencing factors under Section 3553(a).

granting the motion; (2) whether the defendant is a danger to the community; *and* (3) the Section 3553(a) factors.  Only if a court determines that *each* of those considerations support release, may the motion be granted.  See U.S.S.G. § 1B1.13.  Nowhere in the statute or sentencing guideline does it say that, if an extraordinary and compelling reason is shown, that showing must be *weighed* against the defendant's danger to the community or the non-existent support from the Section 3553(a) factors, such as in this case.

In summary, all of the relevant sentencing factors under Section 3553(a) weigh in favor of the 240-month sentence imposed in this case and against releasing Contreras.  Therefore, upon de novo review and as supplemented herein, the Court agrees with the Magistrate Judge's finding that the Section 3553(a) factors require denial of Contreras' motion for compassionate release.  As a result, the F&R, Dkt. No. 152, is ADOPTED to the extent set forth herein.

IT IS SO ORDERED.

DATED: July 6, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

United States of America v. Roman Gabriel Contreras; Cr. No. 15-00242 DKW; **ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY MOTION FOR COMPASSIONATE RELEASE**